IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **JOHN D. MYERS,** *on behalf of himself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>**EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS INC.,** and **TRANS UNION, LLC,**<br><br>Defendants. | **Case Number: 1:20-cv-00392-JMS-DLP**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMAND** |

**AMENDED COMPLAINT – CLASS ACTION**

COMES NOW John D. Myers , through counsel, and for Plaintiff's causes of action against Equifax Information Services, LLC., Experian Information Solutions Inc., and Trans Union, LLC. states as follows:

1. This is an action for damages brought by an individual consumer against each of the Defendants for violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 *et seq*. for negatively misreporting his auto loan as discharged in bankruptcy when instead his auto loan was paid on time, never late and reaffirmed in the bankruptcy.

2. Jurisdiction of this Court arises under 15 U.S.C. §1681p and 28 U.S.C. §1331.

3. Venue lies properly in this district under 28 U.S.C. §1391(b).

**The Parties**

4. Plaintiff is a resident of Knightstown, in Henry County, Indiana.

5. Defendant Equifax Information Systems, LLC ("Equifax") is a Georgia Limited

Liability Company.

6. Defendant Equifax was and is engaged in the business of credit reporting, including within Indiana.

7. Defendant Equifax is included hereafter in the term Credit Reporting Agency Defendant.

8. Defendant Trans Union LLC ("Trans Union") is an Illinois corporation.

9. Defendant Trans Union was and is engaged in the business of credit reporting, including within Indiana.

10. Defendant Trans Union is included hereafter in the term Credit Reporting Agency Defendant.

11. Defendant Experian Information Solutions Inc. ("Experian") is a Delaware corporation.

12. Defendant Experian was and is engaged in the business of credit reporting, including within Indiana.

13. Defendant Experian is included hereafter in the term Credit Reporting Agency Defendant.

## THE FCRA

14. "The enactment of FCRA was prompted by congressional concern over abuses in the credit reporting industry." *Fuges v. Southwest Financial Services, Ltd*., 707 F.3d 241, 247 (3d Cir. 2012). It was enacted "in 1970 to ensure fair and accurate credit reporting, promote the efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).

15. Section 1681e(b) of the FCRA requires that "[w]henever a consumer reporting

agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

16. The accuracy of a consumer report is the most important standard in the credit reporting industry. An inaccurate consumer report misrepresents a consumer's credit worthiness and harms the financial industry by failing to give lenders, creditors, and employers an accurate understanding of the lending risk associated with a given consumer.

17. Because credit information is often used as the most factor in determining a consumer's eligibility for credit or insurance, prohibiting the publication of inaccurate consumer reports caused by unreasonable procedures is absolutely critical.

18. In this case, the inaccurate information is especially harmful because accounts that, by all rights, should be reported as "paid in full" and "never late" are instead inaccurately reported as included in consumer bankruptcies.

**Factual Allegations**

19. Plaintiff previously took out an automobile loan with Ally Financial secured by Plaintiff's 2013 Chevrolet Silverado.

20. Plaintiff made every payment on the account properly, and on time.

21. The account was reaffirmed in a bankruptcy, case number 18-08492-JMC-7, filed in the Southern District of Indiana.

22. The Ally account was not discharged.

23. Despite the loan always being paid on time and reaffirmed, Defendants are reporting Plaintiff's loan with Ally Financial as discharged in bankruptcy on Plaintiff's credit report.

24. The reporting of the accounts as discharged is inaccurate.

25. Ally Financial reports consumer credit information concerning the Plaintiff to each of the credit reporting agency Defendants.

26. During the pendency of Plaintiff's bankruptcy, Ally Financial was consistently reporting timely and proper payments on the account.

27. After Plaintiff's March 2019 discharge, Ally Financial continued to report that the Plaintiff was making payments on the account.

28. In August 2019 Plaintiff paid off the Ally Financial automobile loan.

29. At that same time, Ally Financial reported to the credit reporting agency Defendants that the account was current and paid as agreed and was never late.

30. In light of Ally Financial's reporting, the type of loan at issue, and Plaintiff's continued payment on the loan after her bankruptcy discharge, Defendants were on notice that Plaintiff had reaffirmed the Ally Financial automobile loan.

31. In addition each of the Defendants access bankruptcy filings on a daily basis. As such, they either knew or should have known that the Ally account was not discharged in bankruptcy.

32. Defendants are fully aware that reaffirmed debts should not be included in bankruptcy. For example, Experian's website uses the same fact pattern as Plaintiff to illustrate that reaffirmed debts should not be included in the bankruptcy discharge. It states:

> Dear Experian,
>
> My bankruptcy was removed from my credit report late last year. Is there any way to update closed accounts to remove the wording "included in bankruptcy"? I had a car loan at the time of the bankruptcy that I reaffirmed and paid in full in 2009. Do I have to wait until 2019 when the account will be removed from my credit report? It feels like I'm being punished a lot longer than the 10 years for a bankruptcy.
> - WCK
>
> Dear WCK,

> Once an account is reaffirmed and paid in full, it **should no longer show a status of "included in bankruptcy"** on your credit report. When you reaffirm a debt, it means you enter into an agreement with your lender to continue to making payments on the account **rather than including it in your bankruptcy**.
> How Long Does Bankruptcy Stay on Your Credit Report?
>
> The two most common types of bankruptcy are Chapter 7 and Chapter 13. In a Chapter 13 bankruptcy, you pay back a portion of the debts owed. Chapter 13 bankruptcies remain on the credit report for seven years from the date they were filed.
>
> With a Chapter 7 bankruptcy, you do not repay any of the debts owed. Chapter 7 bankruptcies remain on the report for 10 years from the filing date.
>
> …..
>
> **What Happens When You Reaffirm an Account**
>
> Although accounts included in and discharged through bankruptcy are removed after seven years, positive accounts remain for 10 years from the date closed.
>
> If you reaffirmed your car loan, it should no longer show a status of included in bankruptcy. If the loan has been paid in full and is showing no late payments, it can remain on your report for 10 years from the date it was paid in full.
>
> Positive accounts remain on your credit report longer because they are beneficial to your credit history.
>
> https://www.experian.com/blogs/ask-experian/removing-included-in-bankruptcy-status-from-closed-accounts/ (last visited April 29, 2020)

33. Nevertheless, each of the credit reporting agency Defendants are reporting that the account was included in Plaintiff's bankruptcy.

34. Defendants have been reporting and reinserting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties ("inaccurate information").

35. Defendants' reporting of the inaccurate information is material because Plaintiff had made every payment on the account on time, and the account should have been treated as a

5

'satisfactory account.'

36. Instead, Defendants ignored their information furnisher and the information in their own records and marked the account as included in bankruptcy.

37. Defendants have taken an account that should have helped Plaintiff's credit score, and turned it into an account that harms Plaintiff's credit score and negatively and inaccurately reflects upon Plaintiff's credit worthiness and his successful repayment of the Ally Financial automobile loan.

38. Plaintiff's creditors and potential creditors have accessed Plaintiff's reports while the misreporting was on the credit report and were misinformed by Defendants about Plaintiff's credit worthiness.

39. The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, and Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness.

**Facts Common to All Class Members**

40. Each of Defendants' regular practice is to mark reaffirmed accounts as 'included in bankruptcy' even though their information furnishers are reporting payments throughout the duration of a consumer's bankruptcy and after the discharge showing the account was paid on time.

41. The process by which the credit reporting agency Defendants incorrectly identify and mark reaffirmed accounts as 'included in bankruptcy' is an automated process.

42. This automated process results in a pattern and practice of Defendants inaccurately marking reaffirmed accounts as included in bankruptcy.

43. As furnishers of credit information including bankruptcy information, Defendants

6

have access to the bankruptcy filings and can look to see if any particular account was reaffirmed.

### The Credit Reporting Agency Defendants Acted Willfully

44. The credit reporting agency Defendants are sophisticated entities and are well aware of their obligations under the FCRA as it relates to maintaining reasonable procedures to assure the maximum possible accuracy of consumer reports it prepares for consumers.

45. Defendants have in their possession all of the information that they need in order to correctly identify an account as reaffirmed.

46. Defendants have repeatedly maintained that they can rely on their information furnishers to provide information.

47. In the context of reaffirmed accounts however, the credit reporting agency Defendants are ignoring the continuous reporting of their information furnishers and instead applying a blanket bankruptcy notation to accounts that should not be so marked.

48. The credit reporting agency Defendants are aware of each type of account that Plaintiff and the Class Members have, e.g., unsecured loans, secured loans, collections accounts etc.

49. The credit reporting agency Defendants are well positioned to know that secured loans, like automobile loans, can be reaffirmed by a consumer in the bankruptcy.

50. In cases where the consumer continues to make payments throughout the bankruptcy, and the loan is of a secured nature, the credit reporting agency Defendants should not mark the account as included in bankruptcy because the odds of it being so are less than the account being reaffirmed.

51. Defendants are told by their information furnishers, like Ally Financial, when a consumer continues to pay on an account during the pendency of a bankruptcy, and after a

bankruptcy discharge.

52. Despite knowing their legal obligations, the credit reporting agency Defendants acted recklessly and consciously in breaching their known duties and depriving Plaintiff and the other members of the class of their rights under the FCRA.

## Count I
## Violations of the Fair Credit Reporting Act

Comes now Plaintiff and for Count I against Defendants states and alleges to the Court:

53. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

54. Pertinent hereto, Equifax regularly engaged in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports to third parties, and which uses any means or facility of interstate commerce to prepare or furnish consumer reports.

55. Pertinent hereto, Trans Union, LLC regularly engaged in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports to third parties, and which uses any means or facility of interstate commerce to prepare or furnish consumer reports.

56. Pertinent hereto, Experian regularly engaged in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports to third parties, and which uses any means or facility of interstate commerce to prepare or furnish consumer reports.

57. Pertinent hereto, the Plaintiff John D Myers is a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

58. Pertinent hereto, the above-mentioned credit reports were written, oral, or other

communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used or expected to be used or collected in whole or in part to serve as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under 15 U.S.C. 1681b.

59. Under 15 U.S.C. §1681n and 15 U.S.C. §1681o, Defendants are liable to the Plaintiff for willfully and negligently violating the requirements imposed on Defendant Credit Reporting Agencies of information under 15 U.S.C. §1681e(b) in assuring reasonable procedures to assure maximum possible accuracy to prevent such reporting of inaccurate information in Plaintiff's reports.

60. The conduct of Defendants were a direct and proximate cause, and a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff and Defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, and such further relief, as permitted by law.

As a a result of these FCRA violations, the credit reporting agency Defendants are liable to Plaintiff and to each Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for each of the violations alleged herein, and for attorneys' fees and costs pursuant to §1681n and §1681o.

### Class Action Allegations

61. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

62. Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class (the "Class") and sub-class initially defined as follows:

> All consumers in the United States whose consumer reports inaccurately reported reaffirmed accounts as included or discharged in the consumer's bankruptcy.

> All consumers in the United States whose consumer reports inaccurately reported reaffirmed accounts as included or discharged in the consumer's bankruptcy when the information furnisher was reporting payments being made during and/or after the bankruptcy.

63. Numerosity. Fed. R. Civ. P. 23(a)(1). The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the credit reporting agency Defendants and the Class members may be notified of the pendency of this action by published and/or mailed notice. Numerosity can be inferred by Defendants' sizes and the fact that the marking of reaffirmed accounts as included in a consumer's bankruptcy is an automated Process.

64. Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things and without limitation:

   a. Whether the credit reporting agency Defendants inaccurately mark reaffirmed accounts as included in bankruptcy when those accounts are more likely to not be discharged.

   b. Whether the credit reporting agency Defendants have a pattern and practice of ignoring their information furnisher's reporting of account payment history information both during and after an individual's bankruptcy.

      c.    Whether the credit reporting agency Defendants were reckless in not using their capabilities to review bankruptcy filings to determine whether an account should have been listed as reaffirmed instead of discharged.

65.    Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member. Plaintiff seeks only statutory and punitive damages. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

66.    Adequacy. Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Fed. R. Civ. P. 23(a)(4). Plaintiff and his Counsel will fairly and adequately protect the interests of the members of the Class.

67.    Superiority. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by the credit reporting agency Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by credit reporting agency Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by

allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

68. Injunctive Relief Appropriate for the Class. Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Fed. R. Civ. P. 23(b)(2).

**Prayer For Relief**

*WHEREFORE*, Plaintiff and the Class Members pray for relief as follows:

1. An order certifying the proposed FCRA class herein under Fed. R. Civ. P. 23 and appointing Plaintiffs and their undersigned counsel of record to represent same;

2. ;

3. Statutory and punitive damages;

4. Equitable and/or declaratory relief; including that the credit reporting agency Defendants' be restrained from engaging in future conduct in violation of the FCRA;

5. Attorneys' fees, expenses and costs;

6. An Order that the credit reporting agency Defendants, their agents, and anyone acting on their behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify Class members;

7. Pre-judgment and post-judgment interest as provided by law; and

8. Such other relief the Court does deem just, equitable, and proper.

*Respectfully Submitted*,

By: /s/ Michael H. Rapp
Michael H. Rapp         #25702
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101

>Telephone:  (913) 371-0727
>Facsimile:  (913) 371-0727
>Email: mr@kcconsumerlawyer.com
>
>-and-
>
>John T. Steinkamp, #19891-49
>Attorney for Defendant
>5214 S. East Street, Suite D-1
>Indianapolis, IN  46227
>317-780-8300
>john@johnsteinkampandassociates.com

**Jury Trial Demand**

Plaintiff, on behalf of himself and the Class, demands a trial by jury on all claims.

>/s/ Michael H. Rapp
>Attorney for Plaintiff